# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO HERNANDEZ, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NUCO2 MANAGEMENT, LLC, a Delaware Company; and DOES 1 through 100, inclusive,<br><br>Defendants. | 1:17-cv-01645-LJO-JLT<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>(Doc. 3) |

## I. INTRODUCTION

Defendant removed this case from Kern County Superior Court on December 17, 2017, asserting federal removal jurisdiction exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Plaintiff filed a motion to remand, arguing the Court lacks jurisdiction under CAFA because Defendant has not proven by a preponderance of evidence the amount in controversy exceeds $5 million, as required under 28 U.S.C. § 1332(d). For the reasons set forth below, the Court GRANTS Plaintiff's motion to remand.

## II. FACTUAL BACKGROUND

Plaintiff was employed by Defendant as an hourly, non-exempt "Field Operations" worker. Plaintiff alleges Defendant engaged in a "pattern and practice of wage abuse" of its hourly, non-exempt employees by failing to pay them for missed meal periods and rest breaks, by failing to pay overtime compensation, and by failing to pay minimum wage compensation for all hours worked.

1

## III. LEGAL STANDARD: MOTION TO REMAND

CAFA provides federal jurisdiction over putative class actions where the amount in controversy exceeds $5,000,000, there is minimal diversity between the parties, and the number of proposed class members is at least 100. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B). "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court . . . [and] intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). While "no antiremoval presumption attends cases invoking CAFA," *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014), "the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego v. Dow Chem,* 443 F.3d 676, 685 (9th Cir. 2006).

Under CAFA, a removing defendant must file a notice of removal containing a "short and plain statement of the grounds for removal." *Dart Cherokee*, 135 S. Ct. 547 at 553. The Supreme Court has clarified that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," unless a defendant's assertion is contested by the plaintiff. *Id.* at 554. Where, as here, a defendant's asserted amount in controversy is contested, "[e]vidence establishing the amount is required." *Id.* "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 550. Ultimately, the defendant bears the burden of proving that the amount in controversy is met. *Rodriguez v. AT&T Mobility Servs*. LLC, 728 F.3d 975, 978 (9th Cir. 2013). When a party relies on a chain of reasoning that includes assumptions, those assumptions must be reasonable. *Ibarra*, 775 F.3d at 1199 (assumptions "cannot be pulled from thin air but need some reasonable ground underlying them"). A defendant cannot establish removal jurisdiction by mere speculation, or prove the requirement on the basis of unreasonable assumptions. *Id.* at 1197.

# IV. ANALYSIS

**A.  Defendant's Calculation of the Amount in Controversy**

The parties do not contest CAFA's jurisdictional requirements of minimum diversity and class numerosity; the sole dispute is whether CAFA's requirement that the amount in controversy exceed $5 million is met.

In support of its amount-in-controversy calculations, Defendant offers two declarations from its Vice President of Human Resources, Jeffrey Gilheney, providing evidence about the potential size of the class, the number of weeks worked by the class based on employees' length of employment, and the average hourly wage for putative class members.  (Docs. 1-6, 7-1.)  In addition, Defendant relies on allegations in the complaint to establish the amount the complaint places into controversy.

The complaint alleges Defendant engaged in a pattern and practice of wage abuse against its hourly paid, non-exempt employees in California by failing to pay overtime compensation and provide meal and rest breaks as appropriate under the law.  Plaintiff defines the putative class of employees who suffered these wage violations to include "[a]ll current and former hourly-paid or non-exempt Field Operations employees who worked [for Defendant] within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." (Doc. 1-1, ¶ 13.)

 Mr. Gilheney attests there were a minimum of 146 non-exempt, hourly paid Field Operations employees in California between November 1, 2013, and June 10, 2017.  (Doc. 7-1, ¶ 4.)  Based on their employment data, these employees worked at least a total of 14,944 weeks during the relevant period.  Some class members, however, were eligible for 80 (1-4 years of employment) to 120 (more than 4 years of employment) hours of sick and/or vacation time each year based upon their length of employment.  Assuming employees utilized all of their accumulated annual leave and did not work those weeks during their employment (and thus suffered none of the wage and labor violations alleged

during that time), Mr. Gilheney calculates the putative class worked a total of 13,938 workweeks.[1] (Doc. 7-1, ¶ 4.)

**<u>Overtime Compensation Claim</u>**

The complaint alleges Defendant failed to pay overtime compensation for any hours the class members worked more than eight hours per day and/or 40 hours per week. Mr. Gilheney attests, upon review of Defendant's employment data, class members typically worked four 10-hour shifts per week, and their average hourly rate of pay was $22.87. Using this employment data, Defendant asserts the value of Plaintiff's overtime compensation claim is the product of the hourly rate of pay multiplied by 1.5 for time-and-a-half pay, multiplied by 8 hours of overtime per week, multiplied by 14,994 weeks (or 13,938 weeks accounting for vacation and/or sick time). Defendant claims this yields a value of between $4,101,231.36 (14,994 workweeks) and $3,825,144.72 (13,938 workweeks).

**<u>Meal and Rest Break Claims</u>**

The complaint also alleges that Defendant "failed to provide Plaintiff and the other class members the required rest and meal periods during the relevant time." In valuing Plaintiff's meal and rest break claims, the Defendant multiplied the average hourly rate of pay for class members by the number of meal or rest periods missed per week by the number of weeks the class worked. Assuming each class member missed at least 1 meal per workweek, Defendant asserts the value of the claim is between $341,769.28 ($22.87 x 1 x 14,944) and $318,762.06 ($22.87 x 1 x 13,938). Assuming every class member missed 4 meals per week, the amount in controversy is between $1,367,077.12 ($22.87 x 4 x 14,944) and $1,275,048.24 ($22.87 x 1 x 13,938). The same calculation was used to determine the value of the rest break claims, which yielded the same totals.

---

[1] The declaration is inconsistent about defining which putative class members were eligible for vacation and/or sick time. The declaration states that those employed for more than 1 year but less than 4 years earned 80 hours of vacation time each year, but the declaration also states that those who were employed for *less* than a year may have taken 80 hours of vacation *or sick* time. In this regard, the declaration is somewhat unclear. (Doc. 7-1, ¶ 4(a)(ii).)

4

**Waiting Time Penalties for Discharged Workers**

The complaint alleges that Defendant failed to pay discharged class members all wages owed to them within 72 hours after their discharge as required by California Labor Code sections 201 and 202. The complaint seeks up to the maximum statutory penalty of 30 days of wages under California Labor Code section 203. Mr. Gilheney attests that there were 57 discharged employees during the relevant period who had earned an average of $20.84 hourly. (Doc. 7-1, ¶ 4(b).) According to Defendant, if these discharged employees are entitled to the full penalty, they are entitled to 30 days of pay for 8-hour shifts at the average hourly rate of pay. Therefore, Defendant calculates the value of the claim by multiplying the number of discharged employees (57), by 30 days, by 8 hours per day, and by the hourly wage ($20.84) for a total of $285,091.20.

**Non-Complaint Wage Statements**

The complaint alleges Defendant failed to provide Plaintiff and the other class members with complete and accurate wage statements as required under California Labor Code section 226(a). Plaintiff and the class seek to recover from Defendants the greater of the actual damages caused by this failure or an aggregate penalty not exceeding four thousand dollars per employee. (Doc. 1-1, ¶ 88.) If Defendant had failed to provide a meal or rest break 100% of the time, or failed to pay overtime compensation 100% of the time, each wage statement would always necessarily have been inaccurate. This claim has a 1-year statute of limitations. Mr. Gilheney attests there were 89 employees who worked within the relevant time period, and there were 2,077 pay periods during this time. (Doc. 7-1, ¶ 4(c).) An initial penalty for this violation is $50, and $100 for every subsequent violation. According to Defendant, assuming every employee received an inaccurate wage statement every pay period, the claim total is ($50 x 89) + 2,077-89 x $100) = $203,250.00.

**Minimum Wage Claim/Liquidated Damages**

Plaintiff also seeks penalties for Defendant's alleged failure to pay the minimum wage required when it failed to compensate employees for overtime, meal periods, and rest breaks. Pursuant to

California Labor Code section 1194.2, an employer who fails to pay the minimum wage owes the employee (1) the unpaid minimum wage and (2) liquidated damages in the same amount as the unpaid wage. Defendant assumes that each class member had at least one hour of work below the minimum wage for each workweek for the following totals: ($22.87 (hourly pay) x 14,944 (workweeks)) = $341,769.28) or ($22.87 (hourly pay) x 13,938 (workweeks) = $318,762.06. The liquidated damage calculations yield the same amounts.

**Attorney's Fees**

Plaintiff also seeks attorney's fees under California Code of Civil Procedure section 1021.5. (Doc. 1-1, ¶ 43.) Defendant values the potential attorney's fees recovery to be 25% of the total economic damages at stake in the case.

Defendant offers the following valuation of Plaintiff's claims and the total amount placed into controversy by the complaint:

| **Plaintiff's Claims** | **14,994 Workweeks** | **13,938 Workweeks** |
|---|---|---|
| Unpaid Overtime | $4,101,231.36 | $3,825,144.72 |
| Meal Break Premiums (assuming 1 to 4 meal periods missed per week) | $341,769.28 (1 meal)<br><br>$1,367,077.12 (4 meals) | $318,762.06 (1 meal)<br><br>$1,275,048.24 (4 meals) |
| Rest Break Premiums (assuming 1 to 4 break periods missed per week) | $341,769.28 (1 break)<br><br>$1,367,077.12 (4 breaks) | $318,762.06 (1 meal)<br><br>$1,275,048.24 (4 meals) |
| Waiting Time Penalties (30 days) | $285,091.20 | $285,091.20 |
| Non-compliant Wage Statements | $203,250.00 | $203,250.00 |
| Minimum Wage/Liquidated Damages | $683,538.56 | $637,524.12 |
| Sub-Total of Economic Damages | $5,956,649.68 (1 meal, 1 break) to $8,007,265.36 (4 meals, 4 breaks) | $5,588,534.16 (1 meal, 1 break) to $7,501,106.52 (4 meals, 4 breaks) |

| Attorney's Fees | $1,489,162.42 (1 meal, 1 break) to $2,001,816.34 25 percent of damages | $1,397,133.54 (1 meal) to $1,875276.63 (4 meals) 25 percent of damages |
|---|---|---|
| Total Amount In Controversy | $7,445,812.10 to $10,009,081.70 | $6,985,667.7 - $9,376383.15 |

**B.  Whether Defendant's Calculations Are Reasonable and Supported**

**1.  Plaintiff's Arguments**

Plaintiff presents several arguments about the sufficiency of the evidence presented, objects to Mr. Gilheney's declaration as lacking foundation and as too vague to be reliable, and asserts Defendant's assumptions about the number of workweeks, hourly wages, and the violation rate are unsupportable and unduly speculative.  Plaintiff asserts Mr. Gilheney's declaration presents only averages and approximations which render Defendant's calculations inaccurate.  For example, although Mr. Gilheney attempted to account for some sick and/or vacation time the class members may have taken during the applicable period, affecting the number of violations suffered by class members, he does not account for all types of leave taken during the relevant period.  Mr. Gilheney did not calculate the average number of hours worked by each class member, but provided only a workweek calculation of the class as a whole.  Plaintiff also maintains Mr. Gilheney's declaration lacks foundation, and criticizes Defendant's calculations as lacking any evidentiary support in the form of business records.  Finally, Plaintiff argues that the violation rates assumed by Defendant are unreasonable given the evidence Defendant presents about the class.

**2.  General Sufficiency of the Evidence**

Defendant's calculations are not unsupported because Defendant has not proffered business records. *Tajonar v. Echosphere, L.C.C.*, No. 114-cv-2732, 2015 WL 4064642, at *3 (S.D. Cal. July 2, 2015) (removing defendant not required to produce business records "setting forth the precise number of employees in [the] putative class . . . and the precise calculation of damages alleged" to satisfy burden regarding amount in controversy); *see also Muniz v. Pilot Travel Centers LLC,* No. 07-cv-0325-

FCD-EFB, 2007 WL 1302504, at *4-5 (E.D. Cal. May 1, 2007) ("There is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages . . . at this premature (pre-certification) stage of the litigation . . . Rather, it is defendant's burden to produce underlying facts showing only that it is more likely than not that the amount in controversy exceeds $5,000,000 . . . ."). A declaration or affidavit is sufficient to satisfy the defendant's burden to prove the amount in controversy by a preponderance of the evidence. *Ray v. Wells Fargo Bank, N.A.*, 11-cv-1477 AHM JCx, 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011). Mr. Gilheney's declaration is not inadequate without production of the underlying business records on which it is based, nor is Defendant precluded from establishing the amount in controversy without production of its business records.

Mr. Gilheney lays an adequate foundation for the employment information he provides. He attests that in his position as Vice President of Human Resources for Defendant, he is familiar with Defendant's day-to-day operations, and has access to information and reports maintained and generated in the ordinary course of business concerning employees and operations. (Doc. 1-6, Gilheney Decl., ¶ 2.) He states he has personal knowledge of the facts submits in his declaration, which is based on his review and knowledge of Defendant's business and employment data. (Doc. 1-6, Gilheney Decl., ¶ 1.) Mr. Gilheney explains he has access to Defendant's electronic employment data, which tracks current and former employees' names, identification numbers, hourly wages, total compensation, job positions, job status, dates of hire, and separation dates. (Doc. 7-1, Gilheney's Decl. ¶ 3.) Using a payroll database system, he ran and reviewed queries of the employment data to generate the average wage, size of the class, and weeks worked. (Doc. 7-1, ¶¶ 3-4.) Mr. Gilheney's personal knowledge of the business records to which he has access as part of his duties as Vice President of Human Resources for Defendant provides a sufficient foundation. *Cagel v. C&S Wholesale Grocers, Inc.*, No. 2:13-cv-02134-MCE-KJN, 2014 WL 651923, at * (E.D. Cal. Feb. 19, 2014) (sufficient foundation laid by declarant in attesting to knowledge of business records based on personal review, stemming from job

duties as director for human resources).

Plaintiff asserts Mr. Gilheney's declaration is too vague to determine how he calculated variables such as the number of weeks worked by the putative class, and even his workweek calculation for sick and/or vacation time fails to account for all forms of leave taken during the relevant time period. Moreover, Plaintiff's claims the average hourly wage of the putative class is too general, particularly as Defendant is required to maintain the exact information and the putative class is relatively small.

Although the number of workweeks was calculated by the length of each class member's employment, not the specific number of weeks each individual employee worked, this does not render the workweek calculation vague or unsupported. The Court is persuaded, however, that Defendant's alternative workweek calculation accounting for sick and/or vacation time generates a more reasonable and specific estimate than calculating the workweeks solely based on each class member's dates of employment. Unlike Defendant's initial calculation of the workweeks, the alternative calculation does not assume every class member worked a full week every single week of their employment during the relevant period. Although it is possible that not every type of leave is accounted for using this alternative method (i.e., unpaid leave under the Family Medical Leave Act, for military service, or jury duty), accounting for applicable sick and vacation time is a reasonable and conservative method to calculate workweeks. Accounting for all other types of leave possible is tantamount to requiring Defendant to prove definitively the number of weeks each putative class member worked, which is unnecessary to establish the amount in controversy. *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1147-48 (C.D. Cal. 2010) (defendant not required to "research, state, and prove the plaintiff's claims for damages"). Finally, the average wage of class members during the relevant period is an acceptable method on which to base the amount-in-controversy calculation. *See, id.* (approving use of average hourly rate of class members).

In sum, Gilheney's declaration does not lack foundation and is sufficiently specific to allow for reasonable and supported calculations of the amount in controversy. The declaration is also sufficiently specific to support the assumptions made about the size of the class, the hourly pay rate, and the amended number of workweeks (13,938) that accounts for sick and/or vacation time to which employees were entitled. The Court turns next to Defendant's calculations and whether the violation rates Defendant assumes is reasonable.

### 3. The Amount Plaintiff's Claims Place Into Controversy

#### a. Failure to Pay Overtime Wages

The complaint alleges that "Plaintiff and the other class members worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in a week," Defendant intentionally and willfully failed to pay overtime wages owed to Plaintiff and other class members, and Defendant engaged in a pattern and practice of wage abuse. Plaintiff seeks to recover all unpaid overtime compensation. (Doc. 1-1, ¶ 47-50.)

Based on these allegations and Mr. Gilheney's declaration regarding the class, Defendant claims Plaintiff has placed $3,825,144.72 at issue in unpaid overtime wages. This calculation is based on 146 putative class members who worked a total of 13,938 weeks during the relevant period at an average hourly pay rate of $22.87. It is also based on Mr. Gilheney's declaration attesting "Plaintiff and other non-exempt hourly-paid Field Operations employees in California are typically scheduled for ten (10) hour shifts, four (4) days per week. (Doc. 7-1, ¶ 6.) From these variables, Defendant calculates that every employee worked 8 hours of overtime per week (2 hours each shift) for 13,938 weeks at a rate of $34.31 per hour.

Plaintiff argues there is no basis to assume that class members worked 2 hours of unpaid overtime every single shift as Defendant has produced no business records to support such an assumption. Plaintiff also notes in his reply brief that Defendant's calculation improperly includes hours Plaintiff does not allege were unpaid.

Defendant contends that because the complaint alleges Defendant engaged in a pattern and practice of labor and wage violations, the assumption of a 100% violation rate is reasonable. Defendant maintains it has no obligation to prove Plaintiff's case to establish jurisdiction. Moreover, Defendant argues, the complaint alleges Defendant developed policies that *required* Plaintiff and the class to work overtime and skip meal or rest breaks, which suggests these violations occurred every single shift, for every single employee, every week of their employment. Finally, Defendant notes Plaintiff did not provide any evidence showing a different violation rate, thus its assumptions about the nature of the overtime and the frequency it occurred should be credited.

"[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable ones." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015). Whether a removing defendant may assume a 100% violation rate in calculating the amount in controversy depends on the allegations of the complaint and the evidence presented. *Ibarra*, 775 F.3d at 1198-99. For example, in *Ibarra*, the Ninth Circuit determined that the removing defendant could not assume a 100% violation rate where the plaintiff had alleged only a "pattern and practice" of committing wage-and-hour violations, and the class representative alleged experiencing violations on "multiple occasions," not every occasion. 775 F.3d at 1198. In contrast, in *LaCross*, the Ninth Circuit held a 100% violation rate was reasonable where the plaintiff had alleged that the defendant misclassified truck drivers as independent contractors because all of the drivers "allegedly should have been classified as employees rather than as independent contractors." 775 F.3d at 1202.

Here, Plaintiff is correct that his allegation of a "pattern and practice" of wage violations alone is an insufficient basis for Defendant assume a 100% violation rate. Although Defendant points to additional allegations that Plaintiff and the class were regularly required to work overtime without compensation based on Defendant's "policies and practices," without any other details, this does not reasonably support a 100% violation rate. *Ibarra*, 775 F.3d at 1198; *Dobbs v. Wood*, 201 F. Supp. 3d

1184, 1189 (E.D. Cal. 2016). Nevertheless, Plaintiff's overtime claim asserts that workers were not paid overtime compensation for work they performed beyond 8 hours per day or over 40 hours per week, and Defendant has supplied a declaration that its Field Workers in California were typically required to work four, 10-hour shifts per week. If overtime compensation was due for every shift exceeding 8 hours per day, as the complaint alleges, then every 10-hour shift class members worked included two hours of unpaid overtime. Because there is evidence that all putative class members were "typically" subject to a 10-hour work day for which they did not received overtime compensation after their eighth hour of work, a 100% violation rate in this context is reasonable.

Even assuming a 100% violation rate, however, Defendant's calculation overinflates the potential damages: it assumes that Plaintiff and the putative class were not paid *any* wage after the eighth hour they worked, which is not alleged in the complaint.[2] Based on Plaintiff's allegations, the overtime calculation is limited to $22.87 (average hourly rate) x 0.5 (additional overtime compensation due of $11.44 per hour worked over 8 on any particular shift) x 8 hours per week (2 hours per shift, 4 days per week) x 13,938 weeks worked collectively by the putative class. This results in $1,275,048.20 in unpaid overtime compensation, *not* $4,101,231.36 as calculated by Defendant. Based on the allegations of the complaint and the evidence presented by Defendant, $1,275,048.20 is the maximum amount placed into controversy by Plaintiff's unpaid overtime compensation claim.

### b. Meal and Rest Breaks

Plaintiff alleges that Defendant intentionally and willfully required Plaintiff and the other class members to work during meal periods and rest breaks, and failed to compensate them for work performed during those periods. California Labor Code § 226.7(b) provides that "[a]n employer shall not require an employee to work during a meal or rest or recovery period." The penalty for violation of section 226.7(b) is "one additional hour of pay at the employee's regular rate of compensation for each

---

[2] Defendant calculates overtime by multiplying the hourly wage by 1.5, rather than 0.5, which denotes the hourly wage plus the overtime compensation due, not simply the overtime amount.

12

workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7(c).

In determining the amount placed into controversy by each of these claims, Defendant makes two calculations: the first assumes putative class members were denied at least one meal break and one rest break per week during the relevant period; the second assumes Plaintiff and the class members were denied a meal break and a rest break each and every shift they worked (i.e., a 100% violation rate).

As previously noted, where a plaintiff alleges only a "pattern and practice" of labor violations, the defendant's amount-in-controversy assumption of a 100% violation rate is unreasonable. *Dobbs*, 201 F.Supp.3d at 1184 (citing *Ibarra*, 775 F.3d 1198, 1999 ("a 'pattern and practice' of doing something does not necessarily mean *always* doing something")). Nevertheless, a defendant may still reasonably assume a 100% violation rate in making its calculations if it relies on extrapolations from admissible statistical evidence in doing so. *Lacross*, 775 F.3d 1200, 1202-03. Defendant produces no evidence to support a 100% violation rate based on its own employment records, and there are no facts alleged showing that a particular pattern, policy, or practice by Defendant would reasonably result in a 100% violation rate.

Defendant offers an alternative calculation rate that assumes only 1 missed meal period and 1 missed break period per week. This assumption appears reasonable based on the complaint's allegations. Specifically, the complaint alleges Defendant maintained "policies and practices" requiring Plaintiff and the class to work through their meal and rest periods without paying them proper compensation. (Doc. 1-1, ¶ 93.) The Court finds this allegation supports a reasonable inference of a 25% percent violation rate. Where an employer develops or maintains policies and practices that preclude meal and rest periods, it is reasonable to assume the employer has done so to address an issue that presents itself regularly in the course of business – i.e., a policy or practice is not generally

maintained around a one-time or sporadic event.[3]

Also, the allegation of a policy and practice of requiring class members to work through meal and rest breaks is similar to the allegations in *Garza v. Binderson Constructors, Inc.*, No. 15-cv-02661-RMW, 2016 WL 1298390, at *3 (N.D. Cal. Apr. 4, 2016) where the plaintiff alleged that he "regularly" missed meal breaks and that defendants maintained a "policy or practice" of both meal and rest break violations. The *Garza* court found these allegations sufficient to ground an assumption that each class member suffered one missed meal period and one missed break period each week of work, and this Court agrees. Defendant's assumption of a 25% violation rate for each of these claims is reasonable and supported. Thus, the amount in controversy is calculated as follows: the hourly rate of pay ($22.87), multiplied by the number of meals missed (1), multiplied by the number of weeks worked by the class (13,938), equals $318,762.06. The same calculation is applicable to missed rest breaks. The maximum reasonable value of Plaintiff's meal and rest break claims together is $637,524.12.

**C.** A **Preponderance of Evidence Does Not Establish $5 Million in Controversy**

After considering the amount placed into controversy by Plaintiff's claims for overtime and missed meal and rest breaks, it is clear that Defendant cannot satisfy its burden to show at least $5 million is placed into controversy by the complaint. Even assuming (as set out below) Defendant's calculations for each of the remaining claims, including those for minimum wage/liquidated damages and attorney's fees, are reasonable and supported, the total in controversy remains far below the $5 million threshold:

| **Plaintiff's Claims** | **Amount In Controversy** |
|---|---|
| Unpaid Overtime | $1,275,048.20 |

---

[3] For example, a restaurant that has a policy and practice of disallowing wait staff from taking a rest or meal break during busy times of day may run afoul of the meal and rest break requirements. While this hypothetical violation might not recur during every shift for every employee (due to fluctuations in the busy-ness of the restaurant or periodic understaffing due to absentee wait staff) development of a policy or practice suggests the restaurant encounters this situation frequently. An allegation of a practice and policy of requiring workers to skip meal periods reasonably supports a violation rate that is more regular, and a 25% violation rate (one meal and one break missed per week) appears to be a conservative estimate.

14

| | |
|---|---|
| Meal Break Premiums | $318,762.06 |
| Rest Break Premiums | $318,762.06 |
| Waiting Time Penalties | $285,091.20 |
| Wage Statements | $203,250.00 |
| Minimum Wage/Liquidated Damage Claim | $637,524.12 |
| Sub-Total of Economic Damage Claims | $3,038,437.64 |
| Attorney's Fees | $759,609.41<br>25 percent of economic damage claims |
| Total Amount in Controversy | $3,798,047.05 |

As Defendant has not met its burden of proving by a preponderance of the evidence that the amount placed in controversy by Plaintiff's complaint exceeds $5 million, the Court lacks subject matter jurisdiction and Plaintiff's motion to remand is granted.

### IV. CONCLUSION AND ORDER

For the reasons set forth above, it is HEREBY ORDERED that:

1. Plaintiff's motion to remand is GRANTED;
2. The Clerk of this Court is directed to serve a copy of this order on the Kern County Superior Court;
3. The Clerk of this Court is DIRECTED to close this case as the matter has been remanded and is returned to the jurisdiction of the Kern County Superior Court.

IT IS SO ORDERED.

Dated: **February 16, 2018**      /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE

15